UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

– against –

TROY BARROW,

Defendant.

**STATEMENT OF REASONS
PURSUANT TO 18 U.S.C. §
3553(c)(2)**

16-CR-94

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ FEB 0 2 2017 ★

**BROOKLYN OFFICE**

**Appearances**

**United States**

**Robert L. Capers**
United States Attorney, E.D.N.Y.
By: **David K. Kessler**
U.S. Attorney's Office, E.D.N.Y.
271 Cadman Plaza East
Brooklyn, NY 11201

**Defendant**

**Michael K. Schneider**
Federal Defenders of New York
One Pierrepont Plaza
16th Floor
Brooklyn, NY 11201



**JACK B. WEINSTEIN, Senior United States District Judge:**

I.   Introduction...........................................................................................................1

  A.  Instant Offense.................................................................................................2

  B.  Arrest.................................................................................................................2

  C.  Guilty Plea........................................................................................................3

  D.  Sentencing Hearing..........................................................................................3

II.  Offense Level, Category, and Sentencing Guidelines Range.........................3

  A.  Effect of the Older Conviction on Sentencing Guidelines Range....................4

  B.  Effect of More Recent Conviction on Sentencing Guidelines Range.............5

    a)  Determining if a Prior Con*viction is Relevant u*nder the    Sentencing Guidelines...5

    b)  The Elements of the Generic "Controlled Substance Offense" Predicate.................8

    c)  Is Mr. Barrow's More Recent Conviction a Predicate    "Controlled Substance Offense"? ...........................................................................................10

    d)  Is the Modified Categorical Approach Applicable? .....................................11

    e)  Is there a "realistic probability" the conviction involved HCG? ...........12

  C.  Guidelines Calculation .................................................................................13

III. Law...................................................................................................................14

IV.  18 U.S.C. § 3553(a) Considerations.................................................................16

V.   Conclusion .......................................................................................................17

I.    **Introduction**

Defendant has pled guilty to two serious crimes—illegal possession and trafficking in firearms. He was sentenced to 42 months incarceration, three years supervised release, and two $100 special assessments. *See* January 17, 2017 Hearing Transcript ("Hr'g Tr."). The government sought a much higher sentence based on two predicate state drug convictions. The court rejected the government's view, and applied a strict categorical rule.

## A.    Instant Offense

Beginning in September 2014, Barrow became the subject of a New York City Police Department ("NYPD") and federal Bureau of Alcohol, Tobacco and Firearms ("ATF") investigation.  Presentence Investigation Report ("PSR") at ¶ 7.  Information of his criminal activity had been supplied to law enforcement officers by a confidential informant.  *Id.* at ¶ 9.  Over the course of 15 months, Barrow sold 14 firearms to undercover law enforcement agents in 12 separate transactions.  *Id.*  He did not know the individuals to whom he sold the guns, nor did he know for what purpose they were being purchased.  *See* Hr'g Tr. at 19:1-8.

The following are three illustrative examples of defendant's criminal conduct.  On July 30, 2015, he told an undercover officer he had a firearm for sale.  The officer met him that same day and gave Mr. Barrow $850 in exchange for a HiPoint .45 caliber pistol.  The transaction was recorded using audio and video devices.  PSR at ¶ 10.  On September 8, 2015, the same pattern was repeated, except this time Mr. Barrow sold the undercover officer a Taurus Model PT738 ACP semiautomatic .380 pistol for $800.  *Id.* at ¶ 11.  On November 9, 2015, Barrow sold two firearms, a Sar Arms model SARB6P 9 mm semiautomatic pistol and a HiPoint model C9 9 mm semiautomatic pistol, to an undercover officer in the Bronx for $1800.  He showed the officer a photograph of another firearm and told him that he could acquire and sell additional firearms.  *Id.* at ¶ 12.  The defendant was not licensed to deal in or possess firearms.  *Id.* at ¶ 13.

## B.    Arrest

He was arrested on January 29, 2016.  *Id.* at ¶ 14.  Until June 8, 2016, he was in custody.  *Id.* at ¶ 6.  He was then released on bond and confined to his home with electronic ankle bracelet monitoring.  *Id.*

## C. Guilty Plea

On July 11, 2016, defendant pled guilty to Counts 1 and 12 of a 13-count indictment. *Id.* at ¶ 1. Count 1 charged dealing in firearms without a license as an importer, manufacturer, dealer or collector of firearms in violation of 18 U.S.C. § 922(a)(1)(A), and 18 U.S.C. § 924(a)(1) (*id.* at ¶ 2); count 12 charged that on November 9, 2015, within the Eastern District of New York, the defendant, having previously been convicted of a crime punishable by a term of imprisonment exceeding one year, did knowingly and intentionally possess a firearm in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2). *Id.* at ¶ 3. The other counts were dismissed at the hearing. *See* Hr'g Tr. at 26:16-18.

## D. Sentencing Hearing

A sentencing hearing was conducted in January 17, 2017. *See generally id.* The hearing was videotaped. *See* 18 U.S.C. § 3553(a); *In re Sentencing*, 219 F.R.D. 262, 264–65 (E.D.N.Y. 2004) (describing the value of video recording).

Mr. Barrow affectionately held his infant son on his lap. His primary plea for leniency was based on a desire to be present during his boy's formative years to ensure that he was not enticed by the "streets" the same way Mr. Barrow was. *See* Hr'g Tr. at 16:12-23.

## II. Offense Level, Category, and Sentencing Guidelines Range

Defendant and prosecution have different views on the proper guidelines calculation. The United States Probation Office, relying on "two felony convictions of either a crime of violence or a controlled substance," believe the base offense level is 24. PSR at ¶ 19; U.S.S.G. § 2K2.1(a)(2). The relevant convictions are: (1) a conviction of violating a New York Class D felony, fifth-degree criminal sale of a controlled substance following a 1994 arrest (PSR at ¶ 35), and (2) a conviction

for the same crime following a 2002 arrest. *Id.* at ¶ 40. Based on those convictions, the government argues that Mr. Barrow's base offense level is 24.

Defense counsel contend that those two convictions cannot serve to increase his offense level. The first conviction is too old, and the second conviction is not a "controlled substance offense" under the Guidelines definition. Under Mr. Barrow's formulation, his base offense level is 14. The U.S. Probation Office responds that the court can use the more recent conviction because the term "controlled substance offense," as defined by the Guidelines, refers to "an offense under federal or state law." U.S.S.G. §2K2.1, n. 1 (incorporating by reference U.S.S.G. § 4B1.2(b)).

## A.      Effect of the Older Conviction on Sentencing Guidelines Range

A prior sentence of 13 months of longer must have been imposed upon defendant, or he must have been incarcerated for that offense, within "fifteen years of the defendant's commencement of the instant offense." U.S.S.G. § 4A1.2(e)(1). Sentences that do not receive criminal history points do not increase a defendant's base offense level under § 2K2.1(a). *See* U.S.S.G. § 2K2.1, cmt., n. 10. In connection with Mr. Barrow's first relevant conviction, he received a sentence of 2.5 to 5 years in prison, and was released from custody on April 6, 1999. PSR at ¶ 35. The earliest criminal conduct the indictment charges Mr. Barrow with begins in September 2014, more than fifteen years after he was released from incarceration in relation to the 1995 conviction. *See* Indictment, Feb. 29, 2016, ECF No. 7. Therefore, this conviction cannot increase Mr. Barrow's base offense level. *See* U.S.S.G. § 2K2.1(a).

## B. Effect of More Recent Conviction on Sentencing Guidelines Range

### a) Determining if a Prior Con*viction is Relevant u*nder the Sentencing Guidelines

The base offense level used to calculate a sentencing range under the Sentencing Guidelines for a firearms crime can vary depending on the defendant's prior convictions. A base offense level of 24 must be applied "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense" (U.S.S.G. § 2K2.1(a)(2)), and a base offense level of 20 must be applied if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(4)(A). "'Controlled substance offense' has the meaning given that term in § 4B1.2(b) and Application Note 1 of the Commentary to § 4B1.2." U.S.S.G. § 2K2.1, cmt., n. 1. Section 4B1.2 defines "controlled substance offense" as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b).

Discerning whether a conviction under state law is a conviction for a "predicate offense" for purposes of sentencing under the Guidelines cannot be accomplished by simply looking at the label attached to the state law of conviction. *See, e.g., Taylor v. United States*, 495 U.S. 575, 590 (1990) (courts must look beyond the "technical definitions and labels under state law" when determining if a defendant has been convicted of a predicate offense that enhances his or her sentence). Instead, courts use a "categorical approach" and "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime—*i.e.*,

5

the offense as commonly understood." *Decamps v. United States*, 133 S. Ct. 2276, 2281 (2013).

"The prior conviction qualifies as [a] . . . predicate only if the statute's elements are the same as,

or narrower than, those of the generic offense." *Id.* "[I]f the statute [under which the defendant

was convicted] sweeps more broadly than the generic crime [described in the Guidelines], a

conviction under that law cannot count as [a] . . . predicate, even if the defendant actually

committed the offense in its generic form." *Id.* at 2283; *see People v. Olah*, 89 N.E.2d 329 (N.Y.

1949) (even if defendant had stolen a thousand dollar gold coin, a conviction under a New Jersey

statute criminalizing theft of goods worth $20 or more is not a "a crime which, if committed

within [New York], would be a felony" where New York law requires that stolen goods be worth

$100 or more). The sentencing court may only examine the elements of the crime, and not the

facts of the underlying offense, when applying the categorical approach. *Descamps*, 133 S. Ct. at

2283.

The Supreme Court has held, in the context of using the categorical approach in a civil

immigration proceeding, that the "focus on the minimum conduct criminalized by the state

statute is not an invitation to apply 'legal imagination' to the state offense; there must be a

'realistic probability, not a theoretical possibility, that the State would apply its statute to conduct

that falls outside the generic definition of a crime.'" *Moncrieffe v. Holder*, 133 S. Ct. 1678,

1684-85 (2013) (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)). To show that

a State would apply the statute in non-generic way, the defendant "must at least point to his own

case or other cases in which the state courts in fact did apply the statute" in that way. *Duenas-Alvarez*, 549 U.S. at 193. It is not clear that the *Duenas-Alvarez* "realistic probability" gloss on

the categorical approach applies in the context of the criminal sentencing. The only Supreme

Court opinion to refer to that language in the criminal sentencing context is *James v. United*

*States*. In that case, the Supreme Court considered whether a conviction for attempted burglary

under Florida law qualified as a violent felony under the Armed Career Criminal Act ("ACCA").

550 U.S. 192, 195-96 (2007). The Court quoted the "realistic probability" language from

*Duenas-Alvarez* and held that "the proper inquiry is whether the conduct encompassed by the

elements of the offense, in the ordinary case, presents a serious potential risk of injury to

another." *Id.* at 208. This decision was explicitly overruled eight years later—the Supreme

Court held that the relevant clause of the ACCA was unconstitutionally vague because it tied

"the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-

world facts or statutory elements." *Johnson v. United States*, 135 S. Ct. 2551, 2557 (2015). The

*Johnson* Court refused to "jettison…the categorical approach" in part because of the "utter

impracticability of requiring a sentencing court to reconstruct, long after the original conviction,

the conduct underlying that conviction." *Id.* at 2562.

In a "narrow range of cases," courts may apply the "modified categorical approach" and

"look beyond the statutory elements to 'the charging paper and jury instructions' used in a case."

*Descamps*, 133 S. Ct. at 2283-84 (quoting *Taylor*, 495 U.S. at 602). Making an attempt to peek

at the possible factual circumstances of the underlying offense is only permitted if the statute of

conviction is "divisible," meaning it "list[s] potential offense elements in the alternative." *Id.* at

2283-84.

The government has the burden of proving that a prior conviction is a conviction for a

predicate offense. *See, e.g., United States v. Moreno*, 821 F.3d 223, 227 (2d Cir. 2016). Prior

convictions that qualify as predicate offenses can greatly increase sentences, so what constitutes

a prior conviction should be strictly interpreted. *See United States v. Liranzo*, 944 F.2d 73, 79

(2d Cir. 1991). Ambiguity in the applicability of a sentencing enhancement under the Guidelines

must be resolved in favor of the defendant. *United States v. Simpson*, 319 F.3d 81, 86-87 (2d Cir. 2002).

### b) The Elements of the Generic "Controlled Substance Offense" Predicate

The elements of the generic "controlled substance offense," as defined by the guidelines, are not clear. Unlike the generic offense of "burglary" under the ACCA, the Supreme Court has never defined the exact elements of a predicate "controlled substance offense." *Cf. Taylor*, 495 U.S. at 599 ("We conclude that a person has been convicted of burglary for purposes of a § 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime.").

On a case-by-case basis, courts have determined that certain state criminal statutes sweep more broadly than the generic "controlled substance offense." Convictions under such statutes cannot be used to enhance sentences. A state offense is not a predicate offense if a person can be penalized for possession of a controlled substance without actually intending to distribute that substance. A conviction under such a statute cannot categorically be a predicate "controlled substance offense" because it "criminalizes more conduct than falls within the federal definition of a controlled substance offense." *United States v. Savage*, 542 F.3d 959, 965-66 (2d Cir. 2008); *see, e.g., United States v. Price*, 516 F.3d 285, 287-89 (5th Cir. 2008); *United States v. Lee*, 704 F.3d 785, 789 (9th Cir. 2012).

A state law may sweep broader than the federal generic predicate if the state bans substances that federal law does not. Several courts of appeals have held that state laws which ban substances that are not listed in the schedules of the federal Controlled Substances Act ("CSA") are categorically broader than the generic Guidelines "drug trafficking offense."

*United States v. Sanchez-Garcia*, 642 F.3d 658, 661 (8th Cir. 2011); *United States v. Lopez-Cano*, 516 F. App'x 350, 353 (5th Cir. 2013); *United States v. Valdavinos-Torres*, 704 F.3d 679, 684 (9th Cir. 2012); *see also United States v. Leiva-Deras*, 359 F.3d 183, 189 (2d Cir. 2004) (holding that a state conviction is a "drug trafficking offense" because the trafficked drug is listed in a CSA schedule). The elements of a predicate "drug trafficking offense" under the Guidelines are largely the same as the elements of a predicate "controlled substance offense" under the Guidelines—the definitions of the two offenses are identical in all pertinent ways. *Compare* U.S.S.G. § 4B1.2(b) (defining a "controlled substance offense" as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense."), *with* U.S.S.G. § 2L1.2, cmt., n. (1)(B)(iv) (defining a "drug trafficking offense" as "an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of, or offer to sell a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense."); *see also United States v. Ford*, 509 F.3d 714, 716 (5th Cir. 2007) (recognizing that the terms "controlled substance offense" and "drug trafficking offense" have "nearly identical USSG definition[s]" and using past decisions interpreting "drug trafficking offense" to analyze a challenge involving a "controlled substance offense" because the issues raised in those past decisions were "closely analogous" to the issue in the present case).

If Mr. Barrow's more recent conviction is for violating a state statute that sweeps broader than the federal predicate in either of these two ways, it may not be used to enhance his sentence pursuant to section 2K2.1 of the Guidelines.

### c) Is Mr. Barrow's More Recent Conviction a Predicate "Controlled Substance Offense"?

Mr. Barrow's more recent conviction is for a violation of New York Penal Law § 220.31. The law reads: "A person is guilty of criminal sale of a controlled substance in the fifth degree when he knowingly and unlawfully sells a controlled substance. Criminal sale of a controlled substance in the fifth degree is a class D felony." N.Y. Penal Law § 220.31 (West). In New York, a "conviction" is "the entry of a plea of guilty to, or a verdict of guilty upon, an accusatory instrument other than a felony complaint, or to one or more counts of such instrument." N.Y. Crim. Proc. Law § 1.20 (McKinney). The PSR only lists the dates of arrest and sentencing for the relevant convictions. *See* PSR at ¶ 40. Mr. Barrow was arrested on December 4, 2002 and sentenced on March 15, 2005. *Id.* Neither party presented evidence of when exactly his "conviction" occurred during the period between his arrest and sentencing.

The first way a state statute may be broader than the generic crime—that it can be violated without sufficient intent to sell a controlled substance—is probably foreclosed by the Court of Appeals for the Second Circuit's decision in *Pascual v. Holder*. In that case, the appellate court distinguished a similar New York statute from the Connecticut statute at issue in *Savage* and held that "[u]nder New York law, the offer must be 'bona fide,' and a bona fide offer is one that is made with the intent and ability to follow through on the transaction." 723 F.3d 156, 159 (2d Cir. 2013).

The second way the state statute may be broader than the generic crime—that New York law bans a broader list of substances than the CSA—applies to Mr. Barrow's conviction.

"Chorionic gonadotrophin," also known as chorionic gonadotropin and human chorionic gonadotropin ("HCG"), has been listed continuously on the New York scheduled of controlled substances since, at the latest, January 31, 2001. *See* N.Y. Pub. Health Law § 3306, Sch. II(j) (McKinney) (2001) (listing "chorionic gonadotrophin"); 2003 N.Y. Sess. Laws Ch. 591 (A.8146–A) (McKinney) (rescheduling "chorionic gonadotrophin" under Schedule III). This substance is not criminalized by any CSA schedule. *See Coronado v. Holder*, 759 F.3d 977, 983 n. 1 (9th Cir. 2014).

HCG is a hormone that is naturally produced by pregnant women and is prescribed to women with fertility issues. Lance Williams, *HCG helps steroid users restore testosterone*, SFGATE, May 8, 2009, *available at* http://www.sfgate.com/sports/article/HCG-helps-steroid-users-restore-testosterone-3162496.php. It is also used by men using anabolic steroids in order to restore natural testosterone production and avoid side effects of a steroid regimen such as loss of muscle mass and atrophied testicles. *Id.* Manny Ramirez, then a professional baseball player, was suspended by Major League Baseball for 50 games in 2009 for testing positive for HCG. *Id.*

Because HCG is criminalized by New York but not by the federal government, a conviction under New York Penal Law § 220.31 is categorically broader than a conviction for a generic "controlled substance offense."

### d)     Is the Modified Categorical Approach Applicable?

The court is only permitted to employ the modified categorical approach—and look to more than just the statutory elements of the conviction—if the statute "list[s] potential offense elements in the alternative." *Descamps*, 133 S. Ct. at 2283-86. New York Penal Law § 220.31 does not list elements in the alternative; it is violated when a person "knowingly and unlawfully sells a controlled substance." There is no need to resort to the "tool" of the modified categorical

11

approach "to find out *which* [offense] the defendant was convicted of." *Id.* at 2285 (emphasis added). He was convicted of the only offense created by the statute: "knowingly and unlawfully sell[ing] a controlled substance." New York Penal Law § 220.31 (West). This statute is indivisible, and therefore the court cannot look beyond the statutory elements when deciding if the underlying conduct which lead to the conviction fits the elements of a generic offense under the Guidelines. *Cf. Coronado*, 759 F.3d at 984-85 (applying the modified categorical approach to Cal. Health & Safety Code § 11377(a) because that statute "identified a number of California drug schedules and statutes and organizes them into five separate groups, which are listed in the disjunctive. . . . [B]y its very terms, § 11377(a) lists potential offense elements in the alternative.") (internal quotation marks omitted).

### e)    Is there a "realistic probability" the conviction involved HCG?

It may not be necessary to find that there is a "realistic probability" that New York applies its controlled substance offense statute in a way that is broader than the federal generic crime. *See supra* Part II(B)(a). If the court were required to make this inquiry, it would find that there is a "realistic probability" that New York applies its penal law to punish possession and sale of HCG. State authorities have issued indictments "in which chorionic gonadotropin is listed as the substance at issue." *In re Omar Koran Smith*, 2015 WL 4761254 at *2 (B.I.A. July 22, 2015). Unlike the defendant in *Duenas-Alvarez*, who sought to prove that California's "natural and probable consequences" legal doctrine made it hypothetically possible that the state's theft statute criminalized conduct that went beyond a generic theft crime, there is no need to apply "legal imagination" to foresee New York criminalizing nongeneric controlled substance offenses. The reality is that New York can, and does, prosecute people for conduct involving HCG. It is not just "a theoretical possibility, that the State...appl[ies] its statute to conduct that

falls outside the generic definition of a crime" (*Duenas-Alvarez*, 549 U.S. at 193); New York actually does so.

Mr. Barrow's conviction under New York Penal Law § 220.31 is not a predicate crime for the purposes of enhancing his sentence under section 2K2.1 of the Sentencing Guidelines.

## C. Guidelines Calculation

Defendant's base offense level is 14, with a criminal history category of III. *See* U.S.S.G. 2K2.1(a)(6); PSR at ¶¶ 40, 41, 44, 45. The offense level was increased by four points pursuant to U.S.S.G. § 2K2.1(b)(1)(B) because between 8 and 23 firearms were involved, and by four points pursuant to U.S.S.G. § 2K2.1(b)(5) because Mr. Barrow was engaged in the trafficking of firearms. PSR at ¶¶ 20-21. The offense level was decreased by three points pursuant to U.S.S.G. § 3E.1.1(a)-(b) for defendant's acceptance of responsibility. *Id.* at ¶¶ 27-28. The total adjusted offense level is 19. The Guidelines imprisonment range is 37 to 46 months. *See* U.S.S.G. Ch. 5 Pt. A.

The trafficking offense carries a maximum term of 5 years of imprisonment. 18 U.S.C. § 924(a)(1). The felon in possession offense carries a maximum term of 10 years of imprisonment. 18 U.S.C. § 924(a)(2).

Defendant's counsel asked for leniency in the sentence based on Mr. Barrow's tough childhood and the hardship a sentence of incarceration would impose on his family. *See* Hr'g Tr. at 12:25-14:6. The government argued for a sentence within the guidelines to accomplish specific and general deterrence. *See* Hr'g Tr. at 18:4-20:6.

The statutory provisions and Guidelines impose a term of supervised release of not more than three years. 18 U.S.C. § 3583(b)(2); U.S.S.G. § 5D1.2(a)(2).

Defendant is ineligible for probation. U.S.S.G. § 5B1.1, comment, n. 2.

## III. Law

Pursuant to the Supreme Court's decision in *United States v. Booker*, the Guidelines are advisory; a sentencing court may depart from the Guidelines in the interest of justice as well as in light of other statutory concerns as expressed in section 3553(a). *United States v. Booker*, 543 U.S. 220, 245-46 (2005); *see also United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) ("It is now, however, emphatically clear that the Guidelines are guidelines – that is, they are truly advisory. A district court may not presume that a Guidelines sentence is reasonable; it must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense.").

A sentencing court shall "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). If the sentence is not of the kind prescribed by, or is outside the range of, the Sentencing Guidelines referred to in section 3553(a)(4) of title 18, the court shall indicate the specific reasons for imposing a different sentence. *See* 18 U.S.C. § 3553(c)(2). These "reasons must also be stated with specificity in a statement of reasons form." *Id.* Even though the Guidelines are now advisory rather than mandatory, *Booker*, 543 U.S. at 245-46, the sentencing court must still adhere to the requirements of 18 U.S.C. § 3553(c)(2). *United States v. Jones*, 460 F.3d 191, 197 (2d Cir. 2006). The sentencing court's written statement of reasons shall be "a simple, fact-specific statement explaining why the Guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Rattoballi*, 452 F.3d 127, 138 (2d Cir. 2006), *abrogated in part on other grounds by Kimbrough v. United States*, 552 U.S. 85 (2007). The statement should demonstrate that the court "'considered the parties' arguments' and that it has a 'reasoned basis for exercising [its] own legal decisionmaking authority.'" *Cavera*, 550 F.3d at 193 (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)).

In view of the excessive incarceration rates in the recent past and their unnecessary, deleterious effects on individuals sentenced, society, and our economy, parsimony in incarceration is to be prized. *See, e.g.,* 18 U.S.C. § 3553(a) ("The court shall impose a sentence sufficient, but not greater than necessary."); National Research Council of the National Academies, *The Growth of Incarceration in the United States, Exploring Causes and Consequences,* 8 (2014) ("*Parsimony*: the period of confinement should be sufficient but not greater than necessary to achieve the goals of sentencing policy."); Jalila Jefferson-Bullock, *How Much Punishment is Enough?: Embracing Uncertainty in Modern Sentencing Reform,* 24 J. L. & Pol'y 345, 350 (2016) ("The enactment of lengthy criminal sentence legislation relied on two misguided beliefs: (1) that long sentences can achieve utilitarian and retributive punishment purposes; and (2) that law and policy makers and judges can accurately predict how much punishment is enough at sentencing."); James Austin, Lauren-Brooke Eisen et al., The Brennan Center for Justice, *How Many Americans are Unnecessarily Incarcerated?,* 34 (2016) ("Incarceration is recommended [for non-violent weapon offenses], but the authors believe time served can be safely reduced; an approximate 25 percent cut should be considered."); Barack Obama, *The President's Role in Advancing Criminal Justice Reform,* 130 Harvard L. Rev. 811, 865-66 (2017) ("[T]hose entrusted with influence over the direction of the criminal justice system must also remember that reform is about more than the dollars we spend and the data we collect. How we treat those who have made mistakes speaks to who we are as a society and is a statement about our values – about our dedication to fairness, equality, and justice and about how to protect our families and communities from harm, heal after loss and trauma, and lift back up those among us who have earned a chance at redemption.").

## IV.    18 U.S.C. § 3553(a) Considerations

As required by 18 U.S.C. § 3553(a), the court considered the "nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Mr. Barrow is a forty-eight year old man who was born in Brooklyn. *See* PSR at ¶ 53. His father was shot and killed at age twenty-five when Mr. Barrow was only five-years old. *Id.* His mother suffered from alcoholism and died only three years later of cirrhosis. *Id.* He has almost no memory of either of his parents. *Id.* at ¶ 55. The fact that his father was murdered was kept from him until he found out about it "on the street." *Id.* As his mother descended into alcoholism, she began to physically abuse her children. *Id.* at ¶ 56. Mr. Barrow's elementary school contacted his mother about the abuse shortly before she died. *Id.* After his parents died, he and his three sisters were raised by his maternal grandmother in the Coney Island section of Brooklyn. *Id.* at ¶ 55. The family subsisted almost entirely on welfare. *Id.* at ¶ 56. Also, as an African-American family in a predominantly Hispanic neighborhood, Mr. Barrow was often "jumped" and had to fight to defend himself. *Id.* His sisters are all supportive of him and described him as a loving, family-oriented, determined individual who "got caught up in a bad situation." *Id.* at ¶ 57.

Mr. Barrow married in 2015. *Id.* at ¶ 58. Together they have one child, a son who was born prematurely at the end of 2014. *Id.* at ¶ 58. Mr. Barrow's wife works at the Parks Department and Mr. Barrow is his son's primary caretaker. *Id.* at ¶ 59. Now two-years old, their son is progressing normally. His wife has five children from previous relationships, three of whom live with Mr. Barrow, his wife, and his son. *Id.* at ¶ 58. His step-grandson also resides with him. *Id.* at ¶ 61. His step-children look up to him as a father figure, and he has a good relationship with all of them. *Id.* at ¶ 60. His wife, like his sisters, describes him as a devoted member of the family

that made a terrible mistake. *Id.* Mr. Barrow had used drugs in the past, but stopped entirely once his son was born. *Id.* at ¶¶ 67-68.

Mr. Barrow attended high school through the tenth grade. *Id.* at ¶ 70. He stopped attending his vocational high school due to fading interest. *Id.*

This is not his first brush with the law. He has accumulated several state convictions over the years for possession of drugs, trespassing, harassment, and assault. *Id.* at ¶¶ 30-45. Some of those convictions resulted in jail time. *See, e.g. id.* at ¶¶ 33, 35, 40.

Defendant has held jobs over the course of his life, including a stint as a handyman following Hurricane Sandy, a minimum-wage position at McDonalds, and work as a delivery driver. *Id.* at ¶¶ 73-76. He has not worked since 2014, and has had a low income over the past three years. *Id.* at ¶¶ 71-72; 76. He has no mental or physical health issues. *Id.* at ¶¶ 65-66.

## V.     Conclusion

Defendant has had difficulty leading a law-abiding life. His desire to be a role model for his young son is sincere and commendable. This does not, however, reduce the seriousness of his crimes.

In light of the nature of the offense and the characteristics of defendant, he is sentenced to 42 months in prison—the midpoint guideline sentence—three years of supervised release, and no fine in light of his inability to pay one. *See* Hr'g Tr. at 9:24-10:2. Two incremental $100 special assessments are imposed. 18 U.S.C. § 3013. This sentence is within the guidelines range of 37-46 months.

In this case, a sentence within the guidelines range is appropriate because general and specific deterrence may be achieved. *But see* Jefferson-Bullock, *supra* ("The enactment of lengthy criminal sentence legislation relied on two misguided beliefs: (1) that long sentences can achieve

utilitarian and retributive punishment purposes; and (2) that law and policy makers and judges can accurately predict how much punishment is enough at sentencing."). Mr. Barrow is no longer a young man, making it less likely he will commit crimes in the future. He also desperately wants to be a part of his son's life. He sold over a dozen firearms to someone who could have used them to extremely destructive ends. The community needs to understand that firearm crimes are grave. A sentence of this gravity (if properly publicized) will adequately communicate this message.

All relevant elements of the Guidelines and statutes have been considered. Respectful consideration was given to the Sentencing Commission's policy statements, and all other factors listed under section 3553(a) of title 18, to ensure that the sentence is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a).

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date:   February 1, 2017
        Brooklyn, New York